Galen D. Bellamy (SBN: 231792)
bellamy@wtotrial.com
Jacob A. Rey (*pro hac vice*)
rey@wtotrial.com
Jacob D. Taylor (*pro hac vice*)
taylor@wtotrial.com
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202-5647
Telephone:  303.244.1800
Facsimile:   303.244.1879

Dean J. Zipser (SBN: 94680)
DZipser@umbergzipser.com
Adina W. Stowell (SBN: 211719)
AStowell@umbergzipser.com
Umberg Zipser LLP
1920 Main Street, Suite 750
Irvine, CA 92614
Telephone:  949.679.0052
Facsimile:   949.679.0461

Attorneys for Plaintiffs & Counter-Defendants
Coronis Health RCM, LLC and Practical Holdings,
LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORONIS HEALTH RCM, LLC; and PRACTICAL HOLDINGS, LLC, F/K/A PRACTISOURCE, LLC,<br><br>       Plaintiffs and Counter-Defendants,<br><br>   vs.<br><br>NEXTGEN LABORATORIES, INC,<br><br>       Defendant and Counter-Claimant. | Case No.:  8:23-cv-00111-FWS-DFM<br>Assigned to Hon. Fred W. Slaughter<br><br>**ORDER ON STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**<br><br>Date Filed: December 2, 2022<br><br>Date Removed: January 18, 2023<br><br>Trial Date: Not set |

IT IS HEREBY STIPULATED AND AGREED by the parties, through their respective counsel, subject to the approval of the Court, that the following Stipulated Order Regarding the Discovery of Electronically Stored Information (the "Stipulated ESI Protocol" or the "Protocol") be entered by this Court:

# STIPULATED ESI PROTOCOL

**1.     Purpose**

A.     This Order will govern the discovery of electronically stored information ("ESI") as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

**2.     Cooperation**

A.     The parties commit to cooperate in good faith throughout the matter. The parties are expected to use reasonable, good-faith efforts to preserve, identify, and produce relevant and discoverable information. This includes identifying custodians, time periods for discovery, and keyword parameters to guide preservation and discovery.

**3.     Non-Waiver.**

**A.**     To reduce the costs and burdens of discovery, the parties have entered into a non-waiver agreement encompassing all elements and protections of Federal Rule of Evidence 502(d), thereby reducing pre-production review costs and reducing costly and costly time-consuming motions in the event of inadvertent production.

**4.     Proportionality**

A.     The parties will consider the proportionality standard set forth in Fed. R. Civ. P. 26(b)(2)(C) in formulating their discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as practicable. The parties will consider the option of prioritizing certain discovery where appropriate.

**5.     ESI Discovery Plan.**

A.     On or before May 22, 2023, or at a later time if agreed to by the Parties, each Party shall designate and disclose to each other the following (the "Proposed ESI Plans"):

i.    <u>Custodians</u>. The name and title of each custodian the Party intends to search for discoverable ESI, including (but not limited to) Email communications.

ii.    <u>Non-custodial Data Sources</u>. A list of non-custodial data sources (e.g., shared drives, servers (including email servers such as Exchange), document management systems, cloud-based folders, databases, third-party data sources, etc.) the Party intends to search for discoverable ESI.

iii.    <u>Search Terms</u>. A list of the search terms, if any, that the Party intends to apply to restrict or limit its review and/or production of documents from each data source it identifies and which Requests for Production each search term (or terms) corresponds.

iv.    <u>Search Term Hit Report</u>. To facilitate agreement on search terms and the resolution of disputes, the producing party shall timely disclose hit reports for (1) its proposed search terms or modifications and (2) terms or modifications proposed by the requesting party. The hit report shall include the number of documents that hit on each string, the number of unique documents that hit on each string (documents that hit on a particular string and no other string on the list), and the total number of documents that would be returned by using the proposed search term list, both with and without families. The hit reports shall be run after the producing party globally de-duplicates documents.

v.    <u>Date Limitations</u>. The date limitations, if any, the Party intends to apply to restrict or limit its review and/or production of documents from each data source it identifies, including identification of any specific search terms or custodians that date limitations will restrict.

vi.    Technology Assisted Review ("TAR"). If a Party intends to use TAR to assist any portion of its review process, it shall disclose its proposed TAR protocols.

vii.   Inaccessible Data. A list of all data sources, if any, that are reasonably identifiable and likely to contain discoverable ESI (by type, date, custodian, electronic system, or other criteria sufficient to specifically identify the data source) that a Party asserts are not reasonably accessible.

**6.     Duty of Producing Party**

A.     The Parties agree that if a producing Party is aware, or becomes aware, of relevant or responsive ESI that was not extracted, identified, or produced under the Party's Proposed ESI Plan (e.g., the custodians identified or the search terms used did not result in the identification or production of the ESI) the producing Party will produce such ESI.

**7.     Preservation of ESI**

A.     The Parties acknowledge that they must take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control.

B.     The parties agree that the circumstances of this case do not warrant the preservation, collection, review, or production of ESI that is not reasonably accessible because they anticipate that enough relevant information can be yielded from reasonably accessible sources and, as necessary and appropriate, supplemented with deposition discovery. Moreover, the remote possibility of additional relevant information existing in not reasonably accessible sources is substantially outweighed by the burden and cost of preservation, collection, review, and production of ESI from sources that are not reasonably accessible. The parties agree that the following ESI is not reasonably accessible:

STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION

i.    Data maintained or duplicated in any electronic backup system for system recovery or information restoration, including but not limited to system recovery backup tapes or other media, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten or otherwise made not reasonably accessible per an established routine system maintenance policy.

ii.   Unallocated, slack space, deleted data, file fragments, or other data accessible by use of computer forensics;

iii.  Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve;

iv.   Data relating to online access, such as temporary Internet files, browser history, file or memory caches, and cookies;

v.    Data in metadata fields that are frequently updated automatically as part of the usual operation of a software application, operating system, or network (e.g., data last opened) provided, however, that such metadata as it exists at the time of preservation shall be retained, produced, and not altered by the production process unless it is separately preserved and produced with the relevant document;

vi.   Telephone or VOIP voice messages that are not regularly stored or saved, unless any such messages were otherwise stored or saved;

vii.  Instant messages such as messages sent on Lync Online, Microsoft Communicator, or any other instant message platform if not maintained in the ordinary course of business.

viii. Data stored on cell phones or mobile devices, excluding tablets, that is more reasonably accessible elsewhere, provided that the alternative location is identified . The producing party shall

STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION

produce such data from reasonably accessible sources, along with documentation of the specific device on which it is located. The producing party shall do so without any additional request for production from the receiving party. Further, all such devices that were identified and that contain data that was not preserved shall be identified;

    ix.    Call history records maintained on mobile devices, cell phones, or Blackberries so long as copies of telephone bills that contain such records are preserved and made available when responsive;

    x.    Operating system files, executable files, and log files (including web server, web services, system, network, application log files, and associated databases, analysis output caches, and archives of such data), unless such log files may be used to identify putative class members; and

    xi.    Other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

C.    Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case. To avoid doubt, CDs, DVDs, or other media used in the ordinary course of business to store original data shall be searched for responsive material.

**8.**    **Sources of ESI**

A.    The parties agree to limit searches of discoverable ESI as follows. Searches of ESI shall be limited to up to 6 custodians per party. Each party shall designate its own custodians and, upon designation, disclose the identities of the custodians to the other party. If a party requests ESI from more than 6 custodians, the

requesting party shall reimburse the producing party for the additional expenses of searching for, collecting, reviewing, and producing any additional ESI. The time period for ESI searches shall be limited to the time period of May 1, 2021, to January 18, 2023.

B.      The parties further agree to be bound by the Stipulated Protective Order during the sharing of ESI. Nothing in this Stipulated ESI Protocol precludes any party from challenging the admissibility, discoverability, production, relevance, or confidentiality of information produced under this Protocol or otherwise objecting to its production or use at trial.

C.      No party may seek relief from the Court concerning compliance with the Protocol unless it has conferred with the party it believes to be in noncompliance with the Protocol.

D.      If necessary, the Stipulated ESI Protocol shall be amended by written modification of all parties.

**9.      General Production Format**

A.      The parties will produce ESI in TIFF image format, with the exception of documents that contain color images, which shall be produced in JPEG format, provided that the documents do not become illegible or unusable or in any way alter existing metadata when converted to TIFF image format. Any party may request production of the native format of any document produced in any non-native format. If a dispute arises regarding the reasonableness of the request, the parties agree to meet and confer to resolve their differences.

B.      Certain file types become illegible or unusable when converted to TIFF image format (Microsoft Excel files, other similar spreadsheet application files, Microsoft Project, and audio and video files), and these files must be produced in native format unless they contain information that requires redaction. The parties reserve their rights to seek additional electronic documents in their native format, including natively redacted spreadsheet documents that preserve the searching,

sorting, and filtering characteristics intrinsic to spreadsheet functionality. Electronic documents should be produced in such a fashion as to identify the location (i.e., the network file folder, hard drive, backup tape, or other location) where the documents are stored and, where applicable, the natural person in whose possession they were found (or on whose hardware device they reside or are stored).

C.    All production documents will be produced with extracted text and load files, including the data fields provided in **Exhibit A**. In those instances where redaction is used, OCR text will be provided instead of the extracted text to allow for the removal of the redacted text from production. For documents produced in native format, in addition to producing extracted text and the data fields in the table below, the producing party will provide slip sheets endorsed with the production number and level of confidentiality pursuant to any applicable protective orders in this case.

D.    Non-electronic documents shall be scanned into a static-image format. Copies of file folders and identification of file custodians shall be produced.

E.    For documents that have originated in paper format, the following specifications should be used for their production.

       i.     Each filename must be unique and match the Bates number of the page. The filename should not contain any blank spaces and should be zero-padded (for example, ABC00000001).

      ii.     Media may be delivered on CDs, DVDs, external USB hard drives, or via secure FTP. Each media volume should have a unique name and a consistent naming convention (for example, ZZZ001 or SMITH001).

     iii.     Each delivery should be accompanied by an image cross-reference file that contains document breaks.

     iv.     Each metadata and coding field set forth below that can be extracted shall be produced for each document. The parties are not obligated to populate manually any of the fields below if such

fields cannot be extracted from a document, except the following: (a) PRODBEG, (b) PRODEND, (c) BEGATT, (d) ENDATT, (e) CUSTODIAN, (f) ALL CUSTODIAN, (g) NATIVEFILEPATH, (h) TEXTFILEPATH, and (i) HASHVALUE, which should be populated by the party or the party's vendor. The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

v.  The standard delimiters for the metadata load file should be:

Field Separator, ASCII character 020: " "

Quote Character, ASCII character 254 "þ"

Multi-Entry Delimiter, ASCII character 059: ";"

**10.  Image Format**

A.  Documents that are converted to TIFF image format will be produced in accordance with the following technical specifications:

i.  Images will be single-page, Group IV TIFF image files at 300 dpi;

ii.  TIFF file names cannot contain embedded spaces;

iii.  Bates numbers should be endorsed on the lower right corner of all TIFF images and will be a unique, consistently formatted identifier, i.e., alpha prefix, along with a fixed length number (e.g., ABC0000001). The number of digits in the numeric portion of the bates number format should not change in subsequent productions.

iv.  Confidentiality designations, if any, will be endorsed on the lower left corner of all TIFF images;

B.  Images will be delivered with an image load file in the Opticon (.OPT) file format.

C.  Images, native files, and text files should be stored and delivered in separate folders named "IMAGES," "TEXT," and "NATIVE." Folders should be

segmented into directories, not to exceed 5,000 files.

**11.    Searchable Text**

A.    Searchable text of entire documents will be produced as an extracted text for all documents originating in electronic format or, for any document from which text cannot be extracted, as text generated using Optical Character Recognition (OCR) technology. OCR text will be provided for all documents that originate from hard copy or paper format. The full text of the redacted version of the document will be produced for redacted documents.

B.    Searchable text will be produced as a document-level multi-page ASCII text file with the text file named the same as the PRODBEG field, placed in a separate folder. The full path of the text file must be provided in the .DAT file for the TEXT field.

**12.    Native Files**

A.    Native file documents, emails, or attachments may be included with the electronic production using the below criteria:

> i.    Documents produced in native format shall be re-named to reflect the production number.
>
> ii.    The full path of the native file must be provided in the .DAT file for the NATIVE FILE field;
>
> iii.    The confidentiality designation under the Stipulated Protective Order to be entered in this action will be produced in the load file in the CONFIDENTIALITY field.

B.    If documents produced in native format are printed for use in deposition, motion, or hearing, the party printing the document must label the front page of the file that is printed with the corresponding production number and, if applicable, the confidentiality designation assigned by the producing party to that file under an applicable protective order to be entered in this action.

C.    Excel spreadsheets should be produced in native format with lock/protect

STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION

features and password protection disabled.

**13.   Embedded Objects**

A.   The parties may exclude embedded objects from the production.

B.   Following the production of the files containing embedded objects, a receiving party may make reasonable requests concerning specific embedded objects particularly identified in the requests for the production of these embedded objects as stand-alone files. The producing party shall cooperate reasonably in responding to any such requests.

**14.   Structured Data**

A.   To the extent a response to discovery requires the production of electronic information stored in a database, the parties will confer to attempt to agree upon methods of production that will best provide all relevant information.

B.   To determine the data that is relevant to the document requests, a list of databases and systems used to manage potentially relevant data should be provided on the date specified above with the following information. To the extent a database contains both responsive and non-responsive information, only potentially responsive information needs to be disclosed:

> Database Name
> Type of Database
> Software Platform
> Software Version
> Business Purpose
> A List of Standard Reports
> Database Owner or Administrator's Name

C.   The parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file. If the parties agree to production in this fashion, a document reference sheet shall be provided to describe the purpose of the database and the meaning of all tables and column headers

1   contained in the report.

2   **15.   De-Duplication**

3   A.   Documents shall be de-duplicated across custodians before production.

4   The parties agree to use a verifiable de-duplication process to ensure that one copy of

5   a document is produced when feasible. A producing party shall identify all custodians

6   possessing de-duplicated documents in the "ALL CUSTODIAN" field, listed in

7   **Exhibit A**.

8   B.   For the avoidance of doubt, a document is not considered to be a

9   duplicate in the case where email headers or attachments differ in any regard or where

10   the same document is both attached to an email and exists in a form that is separate

11   from such email (e.g., as an attachment to another email, as a standalone document

12   saved to some electronic media, etc.).

13   C.   For good cause shown, the receiving party shall have the right to request

14   all duplicates of a produced document.

15   **16.   Email Threads**

16   A.   Email threads are email communications that contain prior or lesser-

17   inclusive email communications that also may exist separately in the party's electronic

18   files. A most inclusive email thread is one that contains all of the prior or lesser-

19   inclusive emails, including attachments, for that branch of the email thread.

20   B.   Each party may produce only the most inclusive email threads.

21   C.   Similarly, a party may list the most inclusive email thread on any

22   required privilege log. However, if the most inclusive email thread contains privileged

23   portions and would otherwise be logged in its entirety as privileged, then the thread

24   must be produced with privileged material redacted and the redacted portion logged.

25   D.   Following the production of the most-inclusive email threads, a receiving

26   party may make reasonable requests, concerning most-inclusive email threads

27   particularly identified in the requests, for the production of individual lesser-inclusive

28   emails. The producing party shall cooperate reasonably in responding to any such

1    requests.

2         **17.    Standard for Addressing Privilege**

3         A.    Under Fed. R. Evid. 502(d) and (e), the production of a privileged or

4    work-product-protected document, whether inadvertent or otherwise, is not a waiver

5    of privilege or protection from discovery in the pending case or any other federal or

6    state proceeding. Disclosures among defendants' attorneys of work product or other

7    communications relating to issues of common interest shall not affect or be deemed a

8    waiver of any applicable privilege or protection from disclosure. For example, the

9    mere production of privileged or work-product-protected documents in this case as

10   part of mass production is not itself a waiver in this case or any other federal or state

11   proceeding. A producing party may assert privilege or protection over produced

12   documents at any time by notifying the receiving party in writing of the assertion of

13   privilege or protection. The receiving party must return, sequester, or destroy ESI that

14   the producing party claims is privileged or work product protected as provided in Rule

15   26(b)(5)(B) and may use such ESI only to challenge the claim of privilege or

16   protection.

17        B.    Activities undertaken in compliance with the duty to preserve

18   information are protected from disclosure and discovery under Fed. R. Civ. P.

19   26(b)(3)(A) and (B).

20        C.    Communications involving inside or outside counsel for the parties

21   related to this case that post-date the filing of the complaint need not be placed on a

22   privilege log.

23        D.    The parties agree to furnish logs that comply with Fed. R. Civ. P.

24   26(b)(5) and any other legal requirements for all documents withheld or redacted on

25   the basis of privilege, attorney work product, or similar doctrines. Privilege logs may

26   be produced on a rolling basis or after all productions are complete but before the

27   close of discovery.

28        E.    Nothing in this Order shall be interpreted to require disclosure of

irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

**18.    Effect of Protocol and Reservation of Rights**

A.    The parties agree to be bound by this Order during the sharing of ESI. Nothing in this Protocol precludes any party from challenging the admissibility, discoverability, production, or confidentiality of information produced under this Protocol or otherwise objecting to its production or use during the merits hearing or during any other hearing.

B.    No party may seek relief from the Court concerning compliance with the Protocol unless it has first conferred with the other parties.

C.    The Protocol may be amended by the written agreement of the parties.

D.    Nothing in this Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.

E.    The parties shall confer on an appropriate non-waiver order pursuant to Fed. R. Evid. 502. Until a non-waiver order is entered, information that contains privileged matter or attorney work product shall be immediately returned to the producing party (i) if such information appears on its face that it may have been inadvertently produced or (ii) if the producing party provides notice within 15 days of discovery by the producing party of the inadvertent production.

F.    Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI, or information (including metadata) for relevance, responsiveness, and/or segregation of privileged and/or protected information before production.

1

Dated: <u>May 19, 2023</u>

2

3

4                                         IT IS SO ORDERED:

5

6

7                                         _____

8                                         Hon. Douglas F. McCormick
                                          United States District Court

9

10

11

12   Dated: May 19, 2023

13

                                    By:  */s/Jacob A. Rey*
14                                       _____
                                         Galen D. Bellamy
15                                       Jacob A. Rey (*pro hac vice*)
                                         Jacob D. Taylor (*pro hac vice*)

16                                       Attorneys for Plaintiffs & Counter-Defendants
                                         Coronis Health RCM, LLC and Practical
17                                       Holdings, LLC

18
     Dated: May 19, 2023
19

20                                  By:  */s/ Seth B. Orkland*
                                         _____
21                                       Katie J. Brinson
                                         Seth B. Orkland (*pro hac vice*)
22                                       Edward J. Heath (*pro hac vice*)

23                                       Attorneys for Defendant & Counter-Claimant
                                         NextGen Laboratories, Inc.
24

25

26

27

28

---

15

STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION

**EXHIBIT A**

|   | Field | Definition | Applicable Doc Type |
|---|-------|------------|---------------------|
| 1 | CUSTODIAN | Name of person or data source from where documents/files are produced. Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (e.g., Smith, John A. and Smith, John B.). | All |
| 2 | PRODBEG | Beginning Bates number (production number) | All |
| 3 | PRODEND | Ending Bates number (production number) | All |
| 4 | BEGATT | First Bates number of family range (i.e. Bates number of the first page of the parent email) | All |
| 5 | ENDATT | Last Bates number of family range (i.e. Bates number of the last page of the last attachment) | All |
| 6 | PGCOUNT | Number of pages in the document | All |
| 7 | ATTACHCOUNT | Number of attachments to an email | All |
| 8 | FILENAME | Name of original file name of an E-Doc or attachment to an email | E-docs |
| 9 | DOCEXT | File extension of the document | All |
| 10 | MSGID | Value extracted from parent message during processing | Email |
| 11 | EMAILFROM | Sender | Email |
| 12 | EMAILTO | Recipient | Email |
| 13 | EMAILCC | Additional recipients | Email |
| 14 | EMAILBCC | Blind additional recipients | Email |
| 15 | EMAILSUBJECT | Subject line of email | Email |
| 16 | DATE-TIME SENT (mm/dd/yyyy hh:mm:ss) | Date and time sent | Email |
| 17 | DATE-TIME RCVD (mm/dd/yyyy hh:mm:ss) | Date and time received | Email |

| | | Field | Definition | Applicable Doc Type |
|---|---|---|---|---|
| | 18 | HASHVALUE | MD5 Hash Value | Email, Edocs |
| | 19 | TITLE | Title provided by user within the document | Edocs |
| | 20 | AUTHOR | Creator of a document | Edocs |
| | 21 | DATECRTD (mm/dd/yyyy) | Creation date | Edocs |
| | 22 | DATELASTMOD (mm/dd/yyyy) | Last modified date | Edocs |
| | 23 | DOCTYPE | Descriptor of the type of document:<br><br>"**E-document**" for electronic documents not attached to emails;<br><br>"**Emails**" for all emails;<br><br>"**E-attachments**" for files that are attachments to emails; and<br><br>"**Paper**" for hard copy physical documents that have been scanned and converted to an electronic image | All |
| | 24 | REDACTED | Descriptor for documents that have been redacted. "Yes" for redacted documents; "No" for unredacted documents. | All |
| | 25 | PRODVOL | Name of media that data was produced on. | All |
| | 26 | CONFIDENTIALITY | Indicates if the document has been designated as "Confidential" or "Highly Confidential" pursuant to any applicable Protective Order. "No" indicates those documents that are not so designated. | All |
| | 27 | TEXTPATH | Full path for OCR or Extracted Text files on producing media | All |
| | 28 | NATIVEFILELINK | Full path for documents provided in native format on producing media | Edocs |
| | 29 | ALL CUSTODIAN | Name(s) of all custodian(s) that | Email |

EXHIBIT A

|  | Field | Definition | Applicable Doc Type |
|---|---|---|---|
|  |  | possessed the document; includes any custodian(s) whose duplicate file(s) was removed during processing. |  |
| 30 | FOLDERPATH | File source path for all electronically collected documents and emails, which includes location, folder name and file extension. | Edocs |

EXHIBIT A